**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Denise Johnson and
Laura Longbrake,

        Plaintiffs,

v.

The Prudential Insurance
Company of America,

        Defendant.

Case No. 2:11-cv-664

Judge Graham

Magistrate Judge Deavers

OPINION AND ORDER

This matter is before the court on opposing motions, a motion for summary judgment by defendant The Prudential Insurance Company of America (Prudential) (doc. 20) and a motion for judgment on the administrative record by plaintiffs Denise Johnson and Laura Longbrake (plaintiffs) (doc. 21).

**I.     Factual Background**

This case arises from the denial of accidental death and dismemberment benefits to plaintiffs Denise Johnson and Laura Longbrake. Plaintiffs are beneficiaries of an accidental death and dismemberment insurance policy held by decedent Valerie Chapman, sponsored by Chapman's employer, J.P. Morgan Chase Bank (JPMC), and apparently administered by defendant. Doc. 20-1 at 2, 4-7; doc. 21 at 8. Chapman died following a single-car accident on Interstate 270 in Columbus, Ohio. Doc. 20-1 at 2; doc. 21 at 3. According to a Columbus Police Department report, "Ms. Chapman apparently lost control of her vehicle and crashed into the concrete median . . . . Alcohol is suspected as a contributing factor in this incident." Doc. 19-1 at 238. In addition to the circumstances of the incident, police may have suspected alcohol use based on a credit card receipt

1

in Chapman's wallet showing that she had charged $48.75 at a nearby bar approximately one and a half hours prior to the crash. Doc. 19-1 at 246. A subsequent toxicology report found that Chapman had a blood alcohol level of 0.15%, well above the legal limit. Doc. 19-1 at 194.

Chapman was covered by an accidental death and dismemberment insurance plan offered by her employer, JPMC. Following Chapman's death, plaintiffs submitted claims for a $1 million death benefit under the policy. Doc. 21 at 3. After processing plaintiffs' claim, defendant concluded that it was not covered by the policy and denied it. Doc. 19-1 at 138-143. Defendant concluded that Chapman's death fell under one of the "losses not covered." Doc. 19-1 at 138. These "losses not covered" are identified in a document labeled "JPMorgan Chase Bank, N.A. Supplemental Employee Term Life Coverage[,] Dependents Term Live Coverage[,] Accidental Death and Dismemberment Coverage." Doc. 19-2 at 47. The parties refer to this document as the "plan booklet." Doc. 20-1 at 4; doc. 21 at 3. This document lists eleven "losses not covered," including "[a]n accident that occurs while operating a motor vehicle involving the illegal use of alcohol, PCP, LSD or other hallucinogens, cocaine, heroin or other narcotics, amphetamines or other stimulants; barbiturates or other sedatives or tranquilizers, or any combination of these substances." Doc. 19-2 at 81. Defendant interpreted this provision to exclude coverage for Chapman's death: "Since the death resulted from a bodily injury with an elevated blood-alcohol level in excess of the legal State Limit, we are unable to approve this claim . . . ." Doc. 19-1 at 139.

Plaintiffs appealed Prudential's decision: "The basis of our appeal is that we dispute the findings that the accident was caused by alleged elevated blood alcohol levels in excess of the legal state limit. We believe that the investigation failed to take into account the size and weight of the decedent and the time span in which the alcohol was consumed." Doc. 19-1 at 157. On appeal,

defendant upheld its decision to deny the claim. Doc. 19-1 at 338. Defendant concluded that the toxicology report had taken Chapman's size and weight into account, as well as the time span over which she consumed the alcohol and the time elapsed between the consumption and the crash. Doc. 19-1 at 340. Defendant relied on statements by Dr. John Wyman, Chief Toxicologist for Franklin County, Ohio, who explained that in his opinion, the blood alcohol level reported in the toxicology report was reliable and did take into account Chapman's weight and other factors suggested by plaintiffs. Doc. 19-1 at 339-40. "[I]n my opinion and with a reasonable degree of medical certainty, the insured's blood alcohol concentration at the time of the accident was approximately 0.15%." Doc. 19-1 at 341.

Following the denial of their appeal, plaintiffs filed this lawsuit.

## II.     Standard of Review

Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Both the plaintiffs and the defendant seek final judgment. The defendants style their motion as one for summary judgment, while the plaintiffs seek judgment on the administrative record. "[T]he summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition." Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring) (Judge Gilman's concurrence constitutes the published opinion of the court on the issue of the use of summary judgment in evaluating a claim for benefits under ERISA). Instead, district courts ordinarily review ERISA claims for the denial of benefits "solely on the administrative record" using the standard described below. Id. The Court will construe defendant's motion for summary judgment as a motion for judgment on the administrative record.

"A challenge to an ERISA plan's denial of benefits should be reviewed de novo 'unless the benefit plan gives the [Plan] [A]dministrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the [P]lan.' . . . Where the Plan grants such discretionary authority, the administrator's decision is reviewed under the 'arbitrary and capricious' standard of review." Farhner v. United Transp. Union Discipline Income Protection Program, 645 F.3d 338, 342 (6th Cir. 2010) (quoting Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101, 115 (1989)).

When conducting *de novo* review, the court simply decides whether or not it agrees with the decision under review. Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990). Under this standard, the court must take a "fresh look" at the administrative record. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 616 (6th Cir. 1998). The *de novo* standard of review applies to the factual determinations as well as to the legal conclusions of the plan administrator. Id. at 613.

Under the "arbitrary and capricious" standard, a determination will be upheld if it is rational in light of the plan's provisions. Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997); Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). When it is possible to offer a reasoned explanation for a plan administrator's decision based upon the evidence, that decision is not arbitrary and capricious. Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989).

Which of these two different standards the Court must apply depends on whether defendant has discretion to interpret the terms of the plan. A finding that discretionary authority has been given to the plan administrator does not depend on the plan's use of the word "discretionary" or any other magic word. Williams v. International Paper Co., 227 F.3d 711 (6th Cir. 2000). Rather, courts must focus on the breadth of the administrator's power in determining whether the plan includes a clear

4

grant of discretion to the administrator to determine eligibility for benefits or to interpret or construe the terms of the plan. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998).

Defendant has identified two documents that it argues grant it discretionary authority sufficient to require the arbitrary and capricious standard of review. First, defendant argues that a document labeled as the "Health & Income Protection Program for JPMorgan Chase Bank and Certain Affiliated Companies" provides it with discretion to interpret the plan. Doc.192-2 at 110. The parties refer to this document as the "Wrap Plan." See doc. 22 at 4; doc. 23 at 3. The wrap plan does contain language that appears to grant the program administrator discretion to interpret the plan: "Benefits under the Program or a Plan will be paid only if the Program Administrator or its delegate decides in its discretion that a Participant is entitled to them." Doc. 192-2 at 123. Second, defendant argues that a "summary plan description of the JPMorgan Chase Life and Accident Insurance Plans" gives it discretion in administering the plan. Doc. 19-2 at 137. This document is a summary plan description of several insurance plans that fall under the employer's accident and life insurance program. Id. According to this summary plan description, "[t]he plan administrator or insurance carrier have complete authority in their sole and absolute discretion to construe and interpret the terms of the Life Insurance Plan and any underlying insurance policies and/or contracts, including the eligibility to participate in the Life and Accident Insurance Plan." Doc. 19-2 at 163.

If applied to defendant, both the wrap plan and the summary plan description contain language that would be sufficient to grant discretion in interpreting the plan. However, plaintiffs argue that neither of these documents effectively provide defendant Prudential with discretion to interpret the terms of the Accidental Death and Dismemberment plan under which plaintiffs seek benefits. In order to determine whether the plan gives defendant discretion, we must first determine

5

whether these two documents constitute a part of the plan. "[T]here is no requirement . . . that the terms of an ERISA plan be contained in [a] single document. Nor does the requirement of 29 U.S.C. § 1102(a)(1), that the terms of an ERISA plan be contained in a written instrument require that it be a single document." Rinard v. Eastern Co., 978 F.2d 265, 268 n.2 (6th Cir. 1992). At times it is difficult to discern whether a given document is one that constitutes the plan. "This kind of confusion is all too common in ERISA land; often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as "the plan." Health Cost Controls of Illinois, Inc. V. Washington, 187 F.3d 703, 712 (7th Cir. 1999).

Plaintiffs argue that neither of these documents may grant discretion to prudential. Regarding the wrap plan, plaintiffs argue that a different document, "the Plan Contract" is "the operative legal document," and that because the wrap plan is not mentioned in that document, it is not a part of the plan. Doc. 22 at 4. The document that plaintiffs call "the Plan Contract" or the "plan booklet" is labeled "JPMorgan Chase Bank, N.A.[,] Supplemental, Employee Term Life Coverage[,] Dependents Term Life Coverage[,] Accidental Death and Dismemberment Coverage." Doc. 19-2 at 47. That document contains a description of coverage under the Accidental Death and Dismemberment policy under which plaintiffs seek benefits (as well as other policies) and a page labeled "Certificate of Coverage." Doc. 19-2 at 79, 102. It also contains the list of "losses not covered" relied on by defendant to deny benefits to plaintiffs. Doc. 19-2 at 80-81. The wrap plan (which plaintiffs argue is not a part of the ERISA plan) is a document that purports to "establish[] the Health & Income Protection Program for JPMorgan Chase Bank . . . ." Doc. 19-2 at 114. Under this program, JPMorgan Chase offers twelve plans in which employees may participate, including the Accidental Death & Dismemberment Plan at issue here. Doc. 19-2 at 134. The wrap plan

6

contains descriptions of the eligibility for these plans, the fiduciaries and administrators of the plans and their duties, the funding policy for the insurance program, its privacy rules, how it may be amended or terminated, and other provisions under which the employer provides its employees with various types of insurance and other benefits. Doc. 19-2 at 121-133.

ERISA requires generally that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). The law includes several other requirements of the benefit plan, including that they must "provide a procedure for establishing and carrying out a funding policy . . ." and "provide a procedure for amending such plan . . . ." 29 U.S.C. § 1102(b). The wrap plan satisfies nearly all of the criteria of a plan in Section 1102. The plan booklet, on the other hand, includes none of the statutory requirements of a plan, but instead contains additional information that would be necessary in order to actually administer the Accidental Death and Dismemberment Plan and the other plans that it describes. For example, it clearly delineates the types of accidental death and dismemberment that are not covered by the policy. Neither the wrap plan nor the plan booklet are complete or particularly useful without the other. The wrap plan establishes the policy and describes how it will operate and the plan booklet describes in detail what the AD&D plan is. Yet plaintiffs conclude, without providing any evidence or rationale, that one of these two documents, the plan booklet, is the "operative legal document," but the wrap plan is not.[1] This argument is difficult to square with ERISA, which includes plan requirements that are

---

[1] Plaintiffs argue that "there is nothing in the Administrative Record suggesting that the employee, Valerie Chapman, was aware of the Wrap Plan." Doc. 22 at 4. While ERISA imposes several disclosure requirements, including that the administrator must "furnish to each participant . . . a copy of the summary plan description," it does not require the administrator to ensure that participants have actual knowledge of the plan documents

7

absent from the plan booklet, but are present in the wrap plan. Both documents are plainly required to establish and maintain the plan.

Though the parties identify no cases binding on this Court, other courts have similarly found that wrap plans that establish a group of benefit options may provide terms material to an ERISA plan. For example, in Administrative Committee of the Wal-Mart Stores, Inc. v. Gamboa, the Eighth Circuit considered a wrap plan that, like the wrap plan here, "provid[ed] the governing structure of the overall Plan and describe[d] the general procedures for determining particiaption, funding, administration, and claims under each individual welfare program to be established by the employer." 479 F.3d 538, 542 (8th Cir. 2007). As in this case, identifying the plan was "not a clear cut task," yet the court interpreted the wrap plan as a part of the ERISA plan and interpreted the terms of the wrap plan as well as other documents that were specific to individual benefit plans. Id. at 542-43; see also Admin. Comm. of the Wal-Mart Assocs.' Health and Welfare Plan v. Willard, 393 F.3d 1119, 1120 (10th Cir. 2004) (finding that the wrap plan granted the plan administrator discretion to interpret the plan); Cossey v. Assocs. Health and Welfare Plan, 363 F.Supp.2d 1115, 1133 (E.D. Ark. 2005).

Having decided that the wrap plan is part of the "written instrument" that establishes the ERISA plan, the next question is whether or not the wrap plan grants defendant discretion to interpret the terms of the plan. Plaintiffs argue that it does not. The language in the wrap plan is plainly sufficient to grant discretion: "Benefits under the Program or a Plan will be paid only if the Program Administrator or its delegate decides in its discretion that a Participant is entitled to them."

---

summarized by any summary plan description. 29 U.S.C. § 1024(b)(1). Plaintiffs do not argue that defendant failed to meet ERISA's disclosure requirements.

8

Doc. 19-2 at 123. However, plaintiffs argue that defendant Prudential is neither the Program Administrator nor its delegate: "Nowhere does JPMorgan Chase actually delegate the decision-making authority that the Wrap Plan describes." Doc. 22 at 11. Yet it is abundantly clear from the administrative record that whether it did so with discretion or not, defendant did make the relevant decision–that plaintiffs were not entitled to benefits under the Accidental Death and Dismemberment Plan. See, e.g., doc. 19-1 at 138-143. Plaintiffs appear to be correct that no document in the administrative record formally effects a delegation from JPMorgan Chase to Prudential for the administration of the plan. Yet, the wrap plan and the plan contract together make it clear that such a delegation has occurred. The wrap plan makes it clear that JPMorgan Chase may delegate administration of benefit plans, doc. 19-2 at 123, and the plan contract makes it clear that Prudential, not JPMorgan Chase, is the entity that will make actual coverage decisions. See doc. 19-2 at 168. Nor do plaintiffs argue that Prudential was powerless to administer the plan–to the contrary, they concede that "Ms. Chapman was covered by an insurance plan administered by Defendant Prudential . . . ." Doc. 21 at 3. Plaintiffs' seem to argue that JPMorgan Chase delegated to Prudential the authority to administer the plan, but did not delegate the discretion to do so. This makes little sense in the context of the wrap plan which provides that a delegate "decides in its discretion." Doc. 19-2 at 132. Having found that the wrap plan sufficiently grants defendant discretion to interpret the plan, an "arbitrary and capricious" standard of review is appropriate here.[2]

---

[2] It is not necessary to reach defendant's other argument, that it has discretion based on a summary plan description. Doc. 23 at 3-6. However, such an argument would be difficult to square with Cigna v. Amara, in which the United States Supreme Court recently concluded that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms of* the plan for purposes of § 502(a)(1)(B)." 131 S.Ct. 1866, 1878 (2011).

**III.    Losses not Covered**

Defendant denied plaintiffs' claim for benefits because it interpreted the plan to exclude benefits for Chapman's death as a "loss not covered" under the plan contract. Doc. 19-1 at 138. According to the plan contract, "[a] loss is not covered if it results from . . . [a]n accident that occurs while operating a motor vehicle involving the illegal use of alcohol, PCP, LSD or other hallucinogens, cocaine, heroin or other narcotics, amphetamines or other stimulants; barbiturates or other sedatives or tranquilizers, or any combination of these substances." Doc. 19-2 at 81. Plaintiffs put forth four arguments that this provision is ambiguous and that a reasonable interpretation must conclude that Chapman's death is a covered loss.

First, plaintiffs argue that it is unclear what the word "involving" modifies. Doc. 21 at 10. Plaintiffs offer three possible interpretations: 1) that "involving" modifies "operating," meaning that the operation of the vehicle must involve the illegal use of alcohol or one of the other substances; 2) that "involving" modifies the word "accident," meaning that the accident must involve the illegal use; and 3) that "involving" modifies motor vehicle. Doc. 21 at 10-13. The third interpretation plainly makes no sense–it is unclear how a motor vehicle could "involve the illegal use of alcohol . . . ." The first and second interpretations offered by plaintiffs are both reasonable, but neither interpretation is helpful to the plaintiffs. Under defendant's interpretation of the provision, both the accident and Chapman's operation of the motor vehicle "involved" the illegal use of alcohol. This interpretation is rational in light of the plan's provisions.

Second, plaintiffs argue that the effect of the semicolon is unclear. Doc. 12-13. The purpose and effect of the semicolon *is* unclear. But plaintiffs present no reason that this mysterious punctuation mark suggests their interpretation or renders defendant's interpretation unreasonable.

10

They present no argument that use of some other punctuation mark or none at all would change the meaning of the sentence in some meaningful way.

Third, plaintiffs argue that it is ambiguous whether the word "illegal" refers to the use of alcohol, alcohol and some of the other substances listed, or all of the substances. Even if plaintiffs are right that this is ambiguous, they fail to demonstrate how this ambiguity is relevant to the scenario at hand. In each of the possible interpretations plaintiffs describe, the word "illegal" applies to the use of alcohol. Doc. 21 at 13-14. This ambiguity would only be relevant to determining whether, for example, an accident involving the legal use of tranquilizers would be covered by the policy. Here, Prudential determined that the loss was not covered because it involved the illegal use of alcohol. This alleged ambiguity does not undercut that determination.

Fourth and finally, plaintiffs argue that the noun "use" is ambiguous. Doc. 21 at 15-16. Plaintiffs argue that "use" means "consumption," and that Chapman consumed alcohol legally and then illegally drove her car. Under their construction, plaintiffs argue that "illegal use" means underage consumption–use that is illegal at the moment of consumption. Doc. 21 at 16-19; doc 22 at 15. While plaintiffs' interpretation is reasonable, it is not the only reasonable interpretation. Defendants interpret the "use of alcohol" to extend beyond consumption, into the period of post-consumption intoxication. Doc. 23 at 8. Under this interpretation, the "use" became illegal when Chapman began to drive. Because both of the interpretations of the word "use" are reasonable, under the deferential abuse of discretion standard the Court will not reverse the defendant's interpretation of the plan. Accord Pando v. Prudential Ins. Co. Of America, 524 F.Supp. 2d 848, 854 (W.D. Tex. 2007) (holding that a plan administrator's interpretation of similar plan language to exclude coverage was consistent with a fair reading of the plan); Jones v. Channel Shipyard and Co., Inc., 2001 US

DIST LEXIS 19639 at *11 (E.D. La. Nov. 20 2001) (affirming plan's decision that similar facts constituted "illegal use of alcohol").

**V.    Conclusion**

Based on the foregoing reasons, the defendant's motion for summary judgment (doc. 20) is GRANTED and the plaintiffs' motion for judgment on the administrative record (doc. 21) is DENIED. The clerk shall enter final judgment in favor of the defendants dismissing plaintiffs' complaint with prejudice.

    IT IS SO ORDERED.


                      S/ James L  Graham
                      James L. Graham
                      UNITED STATES DISTRICT JUDGE

Date: October 31, 2012